## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BERNARD W. SLOCUM,                    )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )     Case No. 06-1143-JTM
                                      )
UNUM LIFE INSURANCE COMPANY           )
OF AMERICA,                           )
                                      )
                    Defendant.        )
_____ )

## MEMORANDUM AND ORDER

Before the court is Plaintiff's Motion to Compel Discovery Responses.

(Doc. 16).  Defendant has responded in opposition to the motion (Doc. 22) and

Plaintiff has replied (Doc. 24.)  After reviewing the submissions of the parties and

considering the discovery requests, the Court is prepared to rule on Plaintiff's

motion.

## BACKGROUND

This is an ERISA case alleging improper denial of benefits under Defendant

UNUM's long-term disability benefit plan.  (Doc. 1; Doc. 17, at pg. 1.)  Under the

plan, Defendant "acts in the dual capacity of claims administrator and the insurer

of the plan."  (Doc. 22, at pg. 4.)

Plaintiff was employed as a Farmer's Insurance agent for a period of years, resigning his employment in or about September 2004.  (Doc. 1, at ¶¶ 7, 12.)  The medical conditions from which he allegedly suffers include "degenerative neuropathy, chronic plantar fasciitis, chronic leg pain, chronic fatigue syndrome and cervical disk disease."  (Doc. 1, at § 10.)  He made a claim for disability benefits under the policy at issue in October, 2003. (*Id.*, at ¶ 11.)  He alleges that Defendant denied his claim by letter dated January 6, 2004, "on the basis that he continued to work part time and therefore did not meet the requirement under the elimination period that he be continuously disabled from the ability to perform all job duties for 90 days prior to being eligible for benefits under the policy."  (*Id.*) He also alleges that "[t]here was no evaluation of the medical evidence."  (*Id.*)  He appealed the denial of his claim by letter to Defendant on August 30, 2004, but the decision was upheld.  (*Id.*, at ¶¶ 14-15.)

Plaintiff filed the present lawsuit on May 22, 2006, requesting that the Court order Defendant to "declare him to be disabled under the policy and provide him all benefits he is entitled under the policy," including a lump sum payment of back benefits, a payment pre-judgment interest, an order to "make all future payments under the policy that are owed," and attorneys fees.  (*Id.*, at pg. 6.)

On January 1, 2007, Plaintiff served his first Interrogatories and Requests for Production on Defendant.  (Doc. 14.)  These requests included numerous Interrogatories and Requests for Production of Documents.  (Doc. 17, Exhs. A, B.)  Defendant served responses on Plaintiff, including objections to various discovery requests, on February 14, 2007.  (Doc. 15.)

Plaintiff filed his Motion to Compel (Doc. 16) on March 30, 2007, contending that Defendant's responses to several of the discovery requests were "incomplete."  (Doc. 17, at pg. 2.)  More specifically, Plaintiff argues that his "written discovery is aimed at exploring the nature of [the] inherent conflict of interest" resulting from UNUM serving as both the insurer and administrator of the plan, "to determine the degree to which [the conflict] may have impacted the decision to deny the plaintiff his benefits in this case."  *Id.*

Defendant supplemented its discovery responses (Doc. 21) on April 20, 2007, the same day it responded to Plaintiff's motion (Doc. 22).  In its motion response, Defendant argues that the Court's review is limited to the administrative record, which was previously produced to Plaintiff.  (Doc. 22, at pg. 1.)  Therefore, according to Defendant, Plaintiff is not entitled to discovery beyond this record.  *Id.*  Plaintiff replied on May 4, 2007, arguing that the requested discovery is relevant to the standard of review.  (Doc. 24.)

3

## DISCUSSION

In considering a motion to compel, the first question is whether the requested information is relevant to a claim or defense of a party.  Relevant evidence need not be admissible at trial but must be calculated to lead to the discovery of relevant evidence.  Fed.R.Civ.P. 26(b)(1).  "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."  ***Audiotext Comm. Network, Inc., v. US Telecom, Inc.,*** No. 94-2395, 1995 WL 625962 (D. Kan. Oct. 5, 1995) (citing ***Smith v. MCI Telecomm. Corp.***, 137 F.R.D. 25, 27 (D. Kan.1991)).

"When the discovery sought appears relevant on its face, the party resisting the discovery bears the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." ***Dean v. Anderson***, No. 01-2599, 2002 WL 1377729, at *2  (D. Kan. June 6, 2002).  "The party opposing discovery cannot simply make conclusory allegations that the request is irrelevant, but must specifically show how each discovery request is irrelevant." ***Audiotext***, 1995 WL

4

625962, at *3 (citations omitted).

"When 'relevancy is not apparent, [however], it is the burden of the party seeking discovery to show the relevancy of the discovery request.'" *Dean*, 2002 WL 1377729, at *2 (citing *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000)).  A request for discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  *Haggard v. Standard Register Co.*, No. 01-2513, 2003 WL 365955 (D. Kan. Jan. 21, 2003).

Discovery in ERISA cases, however, presents different challenges to the Court.  For instance, courts in this district have refused to allow "open-ended discovery that is contrary to the purpose of ERISA."  *Panther v. Synthes (U.S.A.)*, 371 F.Supp.2d 1267, 1276 (D.Kan. 2005) (internal citations omitted) (denying a plaintiff's Motion to Compel the production of documents).  The reasoning for this is that "[a] primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992). Therefore, this Court must determine the appropriate scope of discovery in this ERISA case.

The Supreme Court has held that "a denial of benefits challenged under §

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan." ***Firestone Tire & Rubber Co. v.***

***Bruch***, 489 U.S. 101, 115, 109 S. Ct. 948, 956, 103 L. Ed. 2d 80 (1989).  If the

plan gives the administrator or fiduciary such discretionary authority, the case is

reviewed under the arbitrary and capricious standard.  ***Kimber v. Thiokol Corp.***,

196 F.3d 1092, 1097 (10th Cir. 1999).  In the present case, Plaintiff alleges that

"[a]lthough the policy contains a provision granting the Administrator the authority

to exercise discretion in applying the policy, that discretion has been granted by the

Plan Administrator to UNUM."  (Doc. 1, at ¶ 21.)  Defendant does not dispute this.

(Doc. 4, at ¶ 18; Doc. 22, at 2, 4.)

When applying the arbitrary and capricious standard to review a plan

administrator's decision, "the federal courts are limited to the 'administrative

record' the materials compiled by the administrator in the course of making his

decision."  ***Hall v. UNUM Life Ins. Co. of America***, 300 F.3d 1197, 1201 (10th

Cir. 2002); *see also*, ***Fought v. UNUM Life Ins. Co.***, 379 F.3d 997, 1003 (10th Cir.

2004), *vacating & superseding* ***Fought v. UNUM Life Ins. Co.***, 357 F.3d 1173

(10th Cir. 2004).  "The possibility of an administrator operating under a conflict of

interest, however, changes the analysis." *Fought*, 379 F.3d at 1003 (citing

*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002)).  This is

because "[a] conflicted fiduciary may favor, consciously or unconsciously, its

interests over the interests of the plan beneficiaries."  *Id*.  Therefore, if an

administrator or fiduciary who has been given discretion under the benefit plan "is

operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in

determining whether there is an abuse of discretion.'"  *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989)

(citations omitted).   Since the decision in *Firestone*, "all of the circuit courts agree

that a conflict of interest triggers a less deferential standard of review."  *Fought*,

379 F.3d at 1003.

     The Tenth Circuit has chosen to interpret *Firestone* by adopting the "sliding

scale" approach.  *Id*., at 1004.  "'Under [the sliding scale] approach, the reviewing

court will always apply an arbitrary and capricious standard, but the court must

decrease the level of deference given to the conflicted administrator's decision in

proportion to the seriousness of the conflict.'"  *Id*., (quoting *Chambers v. Family*

*Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996) (additional citation

omitted)).  In *Fought*, the Tenth Circuit described how the "sliding scale"

approach is to be applied.  *Id.* at 1005-1007.

On the <u>lower end</u> of the sliding scale – the lesser type of conflict – the Tenth

Circuit identified what it called the "standard conflict of interest" where a fiduciary

plays more than one role pursuant to ERISA.  In cases involving "standard

conflicts of interest" the court required a plaintiff to prove the existence of the

conflict, *i.e.*, proof that the plan administrator's dual role jeopardized his

impartiality.  *Id.* at 1005.  The "standard conflicts of interest" most commonly

involve situations where insurance is not involved and where the company itself is

funding the plan and where its employees may be acting as either the plan

administrator or the review committee responsible for reviewing and approving

applications for benefits.  In such cases, the Tenth Circuit identified several factors

to be considered in deciding whether the administrator is acting impartially: (1)

whether the plan is self-funded, (2) whether the company funding the plan

appointed and compensated the plan administrator, (3) whether the plan

administrator's compensation was linked to the denial of benefits, and (4) whether

the providing of benefits had a significant economic impact on the company

administering the plan.  *Id.*  In those cases, if plaintiff cannot establish a serious

conflict of interest, the court will consider a defendant's standard conflict of

interest as "one factor" in deciding whether a defendant's actions in denying

benefits was arbitrary and capricious.[1]

On the <u>upper end</u> of the sliding scale – the most serious conflict – is the situation in which an "inherent conflict" exists, such as the present case where the plan administrator is acting as both insurer and administrator of the plan. Where such a conflict of interest is apparent or admitted, additional discovery is unnecessary. ***Spangler v. UNUM Life Ins. Co. of Am.***, 38 F.Supp. 2d 952, 955-56 (N.D. Okla. 1999). This is because the conflict is admittedly the most serious and the court will therefore automatically apply the least deferential review by requiring the plan administrator to "bear[s] the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard" and will "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned

---

[1] The Court has reviewed two recent opinions from this District, ***Beasley v. Raytheon Aircraft Co***., No. 04-1069-JTM, 2006 WL 1895453 (D. Kan. July 7, 2006) and ***Navarro v. Eaton Corp.***, No. 06-1190-JTM, 2007 WL 2011205 (D. Kan. July 9, 2007), which were decided under the "standard conflict of interest" test. Both cases involve a plaintiff attempting to prove the existence of a standard conflict and, therefore, needing additional evidence to do so. *See **Navarro***, 2007 WL 2011205, at *3 (stating that "in order to apply the less deferential standard, plaintiff must prove that the administrator's dual role jeopardized his or her impartiality") (citing ***Beasley***, 2006 WL 1895453, at *11-13). For example, ***Beasley*** involved a self-funded plan where the employer appointed the members of the review committee and those members were salaried employees of the company. The District Court applied the factors set out in ***Fought*** for determination of a standard conflict of interest. In the case now before the Court, however, the parties agree that the plan administrator/insurance company is operating under an "inherent conflict." (Doc. 1, at ¶ 21; Doc. 22, at 4.)

application of the terms of the plan to the particular case, untainted by the conflict

of interest." *Fought,* 379 F. 3d at 1006.

*Fought* also recognized other types of "inherent conflicts" described as

"proven conflicts" or where "serious procedural irregularity exists and the plan

administrator has denied coverage." 379 F.3d at 1006. However, since all

"inherent conflict" situations are to be treated the same on review by the court,

once one type of "inherent conflict" is established or admitted in a case, there is no

reason to produce evidence to establish another type of "inherent conflict." Thus,

in this case, since it is admitted that Defendant is both insurer and acts as plan

administrator, there is no reason to allow discovery as to whether there is a "proven

conflict" or a situation where there is a "serious procedural irregularity." That is

basically what Plaintiff in this case is attempting to do.

In the case at bar, Defendant argues that "none of plaintiff's requests seek

information on the procedure," or manner, "in which the Plan Administrator

reached its decision." (Doc. 22, at pg. 7.) Plaintiff counters that her discovery

requests are all sought for the purpose of determining the manner in which the Plan

Administrator reached its conclusion:

> [M]anner and conflict are often intertwined. In order to
> avoid the inherent conflict of interest from impacting
> decision-making, it must put procedures in place to
> discourage decision-makers from considering UNUM's

10

> financial interests.  Whether such procedures are in place
> directly impacts the manner in which decisions are made.
> The discovery requests therefore relate to both issues.

(Doc. 24, at pg. 5.)  While the Court acknowledges Plaintiff's logic, the fact

remains that this argument does not comport with the relevant case law.  Discovery

on the manner in which the Plan Administrator reached its decision would only

serve to prove or refute that the decision was the result of an "inherent conflict."

In the present case, such evidence is irrelevant because Defendant admittedly was

operating under an "inherent conflict."

Therefore, the information sought in Plaintiff's Interrogatories 2, 3, 4, 5, 6

and 7 appears more appropriately tailored to determination of whether a "standard

conflict of interest" can be proven or whether there has been some procedural

irregularity in the denial of Plaintiff's claim  – something that is not necessary

where there is an admitted "inherent conflict."  For example, Plaintiff's

Interrogatory No. 2 requests details regarding the work history of six individuals

involved in Defendant's administrative process, including "dates of employment,

title, home address, work address, and all positions held with the company."

Interrogatory No. 3 inquires as to whether any of the individuals identified in

Interrogatory No. 2 own stock in Defendant;  No. 4 inquires as to how these

individuals were compensated;  and No. 7 asks if they "receive or have access to"

documents relating to Defendant's "financial condition."  This information relates to the financial relationship these individuals have with Defendant.  Interrogatory No. 5 requests a copy of the job descriptions for the following positions with Defendant:  Medical Director, Disability Benefits Specialist, Lead Disability Benefits Specialist, Senior Disability Benefits Specialist, Compliance Specialist, and Senior Appeals Consultant.  Interrogatory No. 6 seeks information relating to "the number of files and the amount of compensation paid" by Defendant to an outside IME consultant who reviewed Plaintiff's file.  As previously noted, all this information appears directed to a determination of the manner in which the Plan Administrator reached its conclusion to deny Plaintiff's claim.[2]  Because it is admitted that Defendant is operating under an "inherent conflict" in this case, none of this discovery is calculated to lead to the discovery of admissible evidence and is not relevant to the issues before the court.  With the admitted existence of an "inherent conflict," Plaintiff will automatically enjoy the least deferential review of Defendant's decision as to his claim.  Therefore Plaintiff's Motion to Compel concerning these discovery requests is **DENIED.**

---

[2]  While such discovery is unnecessary in the present case for the reasons discussed above, Defendant has produced the documents requested in Interrogatory No. 5  "without waiving its objections to discoverability or admissibility."  (Doc. 22, at pg. 10.)  Thus this portion of Plaintiff's motion regarding Interrogatory No. 5 appears to be moot.

Interrogatory No. 9 asks Defendant to "identify every jury verdict or court judgment against Defendant over the past five (5) years in which there was an allegation of improper claims handling practices . . ."  Even if the Court was allowing limited discovery on the manner in which the Plan Administrator reached its conclusion **in this particular case**, these requests seek information that is irrelevant to this issue.  As such, the Court **DENIES** Plaintiff's motion in regard to Interrogatory No. 9.

Request for Production No. 8 seeks "the contracts, pay documents, and job descriptions for the positions identified in Interrogatories Nos. 4 and 5."  The Court did not allow the discovery sought in Interrogatories Nos. 4 and 5.  The information sought here is equally unnecessary because of the inherent conflict involved.  The Court thus **DENIES** Plaintiff's motion in regard to Request for Production No. 8.

Finally, Request for Production No. 9 requests "all 'RSA procedures.'" According to Defendant,

> [t]he RSA is an agreement entered into between Defendant and the federal and state regulators in November 2004.  It set up a procedure which allowed individuals whose claims were denied on or after January 1, 2000 to have those denials afforded a further *de novo* administrative review.

(Doc. 22, at Pg. 13-14.)  Defendant continues by explaining that Plaintiff "failed to

13

take advantage" of this procedure within the allotted time, thus such procedures

"are irrelevant to the issues in this case."  (*Id.*, at pg. 14.)  In his reply, Plaintiff

makes no attempt to controvert Defendant's discussion of the RSA and/or its

applicability to him.  Therefore, because the RSA did not apply to Plaintiff's claim

for benefits, the Court fails to see its relevance, even if it were allowing discovery

on the manner in which the Plan Administrator reached its conclusion in this

particular case.  As such, Plaintiff's motion in regard to Request for Production No.

9 is **DENIED**.

     **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc.

16) is **DENIED** for the reasons set forth in this Memorandum and Order.

     Dated at Wichita, Kansas, on this 28th day of August, 2007.


       s/   DONALD W. BOSTWICK
     DONALD W. BOSTWICK
     United States Magistrate Judge

14