IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BERNARD W. SLOCUM,

        Plaintiff,

vs.

Case No. 06-1143-JTM

UNUM LIFE INSURANCE COMPANY OF AMERICA,

        Defendant.

MEMORANDUM AND ORDER

      Bernard Slocum has brought the present action seeking a determination that defendant UNUM Life Insurance Company of America erred in rejecting his claim for long term disability benefits. Both parties have filed motions for summary judgment. UNUM seeks a ruling that substantial evidence supported its determination that Slocum was not disabled under the disability policy.

      Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual

allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Slocum worked for Farmers Insurance Exchange as an insurance agent for over 33 years. At Farmers, Slocum was enrolled in the company's long-term disability policy with policy number 584771. Farmers was the Plan Sponsor and the Plan Administrator, defendant UNUM is both the insurer and the claims administrator of the policy. Farmers was previously a defendant in this case but was voluntarily dismissed without prejudice.

The Policy defines "disability" as follows:

You are disabled when Unum determines that:

> – you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> – you have a 20% or more loss in your Indexed monthly earnings due to the same sickness or injury; and
>
> – during the elimination period, you are unable to perform *any* of the material and substantial duties of your regular occupation.

>   After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of *any gainful occupation* for which you are reasonably fitted by education, training or experience.

(R. 775).

>   The Policy explicitly defines certain terms:

>   ELIMINATION PERIOD means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum.
>
>   . . . .
>
>   GAINFUL OCCUPATION means an occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work.
>
>   . . . .
>
>   MATERIAL AND SUBSTANTIAL DUTIES means duties that:
>   >   – are normally required for the performance of your regular occupation; and
>   >   – cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.
>
>   . . . .
>
>   REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(R. 800-802). The policy further specifies that the elimination period is 90 days. (R. 778);

>   The policy gives UNUM discretion to determine when someone is disabled:
>
>   In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as its claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(R. 799).

Slocum submitted a claim for long-term disability benefits under the Policy on November 7, 2003. The claim did not state that he could not work and did not identify a date of disability. Slocum stated that his injury "started in feet, legs & lower back. Pain is very bad. Cannot sleep, sit, stand or do anything very long. I force myself to go to office & I am unable to get much done." (R. 746).

At the time of his claim, Slocum was an insurance agent for Farmers, was working, and owned his own business. (0748). During this time, Slocum was working 25-30 hours per week. (R. 932). In December of 2003, he was reportedly "working every day." (R. 567).

After inquiries from UNUM, on December 19, 2003, Slocum submitted an additional claim for benefits that included two additional physician statements. However, none of the physician statements stated whether he could work or a date of disability.

On December 22, 2003, UNUM performed an internal medical review of Slocum's medical documentation by Jean Greer, RN, BSN. The review determined that there was not enough medical information submitted to support the claim. Moreover, it appeared based on the handwriting that the physicians did not complete the section containing restrictions and limitations. Rather, Slocum completed those sections himself. On December 21, 22, and 23, 2003, UNUM contacted Slocum to find out about additional medical providers that might have information on his claim, and asked for records from those physicians.

On January 6, 2004, UNUM denied Slocum's claim for benefits because he did not meet the definition of "disability" with respect to the "elimination period" requirement of the policy. UNUM's letter stated that Slocum had reduced his hours working for Farmers, but still worked on a part-time basis, and thus had not stopped working as required to be disabled under the policy. The denial letter stated:

> Our records indicate that you reduced your work hours in February of 2003 due to chronic pain and depression. During our initial telephone conversation on December 23, 2003, you advised that you continue to work on a part-time basis in your own occupation as an Insurance Agent. Based on your current part-time work status, you

>  do not satisfy the above referenced definition of disability, therefore, we must deny any liability on your claim for long-term disability benefits.

(R. 967).

In January, Slocum contacted UNUM to dispute the denial. During this time, UNUM also received additional medical records from Slocum's healthcare providers. On January 30, UNUM undertook a second internal review of Slocum's medical records. The review was performed by Kay O'Reilly, RN, MSN. After reviewing all the medical information submitted by Slocum, O'Reilly stated that the records did not support impairment. "There is no support for the impairment as of 11/29/03." (R. 1016). O'Reilly noted that Dr. Gadalla signed the physician statement on 11/24/03, but he had not seen Slocum since 10/10/03, and that Dr. Gadalla did not indicate any restrictions or limitations on Slocum.

Slocum visited Edward Cusick, D.O., in February of 2004.  Slocum told Cusick that he had been "confused a lot recently." (R. 297).  Cusick attributed the confusion to Slocum's pain medications, which included Oxycontin, Morphin Sulfate, and Lortab.  A month later, after the medications had been reduced, Slocum reported that he could not sleep at night, and sometimes fell asleep at work.

On February 25, Slocum provided UNUM with additional evidence to support his claim. But he also continued to work on a part-time basis. On March 8, 2004, UNUM again denied the claim for that reason.

In April of 2004, Dr. Joseph Galicia treated Slocum for heart and chronic pain issues.  He wrote that Slocum suffered from "intractable pain," which made it "hard for him to concentrate." (R. 700-701). Dr. Galicia "recommended disability." (Id.) The same month, Slocum visited Dr. Chandrasekhar, a pain management specialist, who concluded that conservative management of Slocum's pain had failed and that he was suffering from side effects of the medication and "chronic opiod dependence" (R. 700).

On May 27, John L. Brennan, an attorney representing Slocum, contacted UNUM regarding the denial of benefits requesting additional information. On August 27, counsel appealed the adverse

5

decision in the March 8, 2004 letter. The letter asserted, among other things, that Slocum met the definition of "disability" contained in the Policy on the basis that he had suffered a 20% or more loss in monthly earnings and that he was not required to stop working completely.  The letter did not dispute that Slocum continued working at that time.

In the August letter, Slocum also asked for additional time to submit medical records. This request was repeated in another letter, asking for an extension until November 8, 2004.  The request was granted, but Slocum did not submit any additional records.

Sometime in or around September 20, 2004, Slocum ended his contractual position with Farmers.

On November 22, 2004, UNUM denied Slocum's claim. UNUM determined that Slocum was able to perform one or more of the material and substantial duties of his regular occupation of agent throughout the elimination period (February 20 to May 19, 2004), because he was still so employed at that time.

Slocum's counsel wrote a December 7, 2004 letter disagreeing with the decision and, essentially appealing the decision. He also requested additional information from UNUM and submitted additional medical records.

On December 13, UNUM sent Slocum's entire file for internal medical review. Slocum had ended his employment at Farmers in September, and was no longer working part-time. For that reason, UNUM proceeded to determine if Slocum had been disabled with respect to the elimination period since September 30, 2004.

On January 4, 2005, Gary McCollum, RN, BSN, of UNUM submitted his report on his medical review of Slocum's file. McCollum's review determined that Slocum's medical records did not support an "impairment from all work function from September 30, 2004, to the present." (R. 509).  McCollum wrote:

> There is nothing in the medical records to suggest any sustained pain symptoms from this and therefore this condition would not support impairment from work.

> His continued complaints of pain are noted to be diffuse and non-specific and do not reflect the diagnostic results.
>
> He was also reported to be non-compliant with the regular pain medication doses and was discharged from one pain management MD.
>
> It is not clear from the documentation how the claimant could be rated as unable to do any type of work due to severe neuropathic pain when it is not evident that he is compliant with the treatment program nor has tried alternative types of treatment or a more aggressive approach to pain management.

(R. 507-09).

On January, 11, 2005, Dr. Alan Neuren, who is a Diplomate in the Board of Psychiatry and Neurology, submitted his report, stating that Slocum's conditions "would not result in impairment." (R. 524).

The same day, Dr. Neuren spoke with Dr. Vesali, Slocum's physician. This conversation was confirmed by Dr. Vesali when he signed the letter sent by Dr. Neuren discussing the conversation. Dr. Vesali wrote, "I agree." (R. 535). Dr. Neuren noted in the follow-up letter to Dr. Vesali that they had discussed Slocum's complaints regarding pain and that the available information did not indicate "active recent disease" or that it took a "progressive course." The letter also noted that Slocum had refused further testing on the issue and had, on several occasions with different doctors, refused to comply with requested treatment. Moreover, Dr. Vesali's examinations "consistently documented normal muscle strength reflexes, motor examinations, sensory examination and gait," which would not be expected with Slocum's diagnosis. Slocum also complained of pain all over his body, when one would expect to see it on only one side. Finally, Slocum had not been seen by Dr. Vesali since September 20, 2004 because Slocum had cancelled two appointments.

On January 13, Slocum submitted a complaint concerning UNUM's handling of his claim to the Kansas Insurance Department.

On January 20, UNUM denied Slocum's second appeal. UNUM determined that the medical records indicated that Slocum could "perform his occupation" and, thus, he was not disabled under the Policy.

On February 4, Ronald Martin responded to the Slocum's complaint to the Insurance Department on behalf of UNUM, stating that the claim was appropriately denied at the outset because Slocum had continued to work and was not disabled during the elimination period. Once Slocum quit working, a medical review of his file determined that he was not medically disabled as he was still able to perform at least some occupational duties. Still, UNUM offered to consider Slocum's claim again.

The same day, Martin wrote a memo to Odette Moshola-Ramos, a Senior Claims Examiner and the person handling Slocum's claim at UNUM. Among other things, Martin told Ramos to have an independent medical review performed.

On February 17, Dr. Neuren wrote to Dr. Vesali requesting that he send updated information on testing performed on Slocum. Dr. Vesali sent a response the next day which referenced "[h]ereditary and idiopathic neuropathy with evidence of moderate degree of progression since his last evaluation," and concluded that Slocum was "unable to work due to severe neuropathic pain." (R. 628).

On March 17, UNUM again denied Slocum's claim. This denial indicated that Slocum had not submitted enough medical information. The letter noted that Dr. Vesali's report was based on only one office visit and one electrodiagnostic study, Vesali did not refer Slocum to a pain specialist or for any follow up pain management, and Vesali's notes were not very thorough and were conclusory. The letter invited Slocum to submit additional information.

On March 22 and May 3, Dr. Vesali submitted additional information from subsequent office visits.

On June 7, UNUM referred Slocum's medical records for another internal review. (0679). On June 13, 2005, Gary McCollum, reported that the newly provided medical evidence did not change his previous conclusions.

On June 22, UNUM sent Slocum's file out for independent medical evaluation. (0688). Dr. Randall Hawkins, a Diplomate in the American Board of Psychiatry and Neurology with a

Certification in Neurology and a medical degree from Yale University, reviewed Slocum's file and determined that Slocum

> has had chronic pain for a considerable amount of time, that he has a history of depression, a history of axonal neuropathy, a history of coronary artery disease of moderate severity and a sleep disorder, which is not appropriately termed sleep apnea syndrome but rather a nonspecific sleep disorder due, with reasonable medical probability, to his depression, chronic pain and use of multiple medications.

(R. 707). However, he further concluded that Slocum's conditions "did not support impairment from all his work function from September 30, 2004, to the present, as the claimant was working, all of the combined effects/disorders notwithstanding, until his contract was terminated on that date." (R. 707). Dr. Hawkins wrote: "It is apparent that all of the problems he had, which have not materially changed since then . . . did not preclude him from working at that time and cannot reasonably be construed to be worsening sufficiently to preclude him from working at the present." (R. 707-08).

On July 14, 2005, UNUM denied Slocum's appeal for the final time. UNUM determined that there was insufficient evidence to support his inability to continue doing at least some of his job functions.

On May 22, 2006, Slocum filed this lawsuit alleging that UNUM had wrongfully denied benefits under the Policy. The Complaint challenges the denial of benefits. In pertinent part, Slocum alleges in his Complaint that, "There is not substantial evidence to support the decision by UNUM in January 2005 to deny the appeal of Bernard Slocum. Slocum claimed that he had met the elimination period requirement and had provided medical documentation that demonstrated he was disabled as defined in the policy and that UNUM had therefore improperly denied benefits under the terms of the policy." (Complaint at ¶ 22).

**Conclusions of Law**

In an action challenging the determination of a Plan Administrator under ERISA, the Court reviews the decision only for an abuse of discretion. See *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1066 (10th Cir. 2004). In a case such as the present, where the decision maker is both Administrator and the insurer, an inherent conflict of interest exists, and the Administrator defendant must demonstrate the reasonableness of its decision. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004). This burden is limited, and may be satisfied by a showing that the decision rests on substantial evidence, which is defined as "such evidence that a reasonable mind might accept as adequate to support the conclusion." *Holt v. Continental Cas. Co.,* 379 F.Supp.2d 1157, 1168 (D. Kan. 2005) (*citing Sandoval v. Aetna Life & Cas.*, 967 F.2d 377, 382) (10th Cir. 1992).

Given the standard, the broad discretion given to UNUM in defining and applying the policy, the policy language which permits an award only if the claimant cannot perform "any" of the duties of his position, and the evidence in the administrative record, the court finds that the defendant's decision was based on substantial evidence, and that no abuse of discretion occurred.

Slocum stresses that UNUM never conducted a vocational analysis of his job duties. However, given the nature and duration of Slocum's continued part-time employment, and that clear provision in the policy language preventing any award of disability if the claimant could perform "any" of the duties of his position, such additional study was not required. Under the plain language of the policy, a claimant would not be considered disabled so long as he could perform even one of the duties of the position.

Slocum continued to work part-time as an insurance agent for Farmers for some ten months after his first claim of disability. In November, 2003, he indicated he was working 25 to 30 hours per week. He indicated that during December, 2003, he was "working every day." (R. 567). In March of 2004, Slocum told UNUM that he was working "part-time."

(R. 83). Thus, even though Slocum had reduced the number of hours worked, the fact remains that he worked some hours, and performed some of the duties of his job.

This must be viewed in conjunction with the substantial medical evidence supporting UNUM's decision, gathered from the medical reviews by Greer, McCollum, Dr. Neuren, and Dr. Hawkins. These sources indicated disagreement with the nature and extent of the condition claimed by Slocum. Dr. Vesali, Slocum's physician and the primary medical source for his claim, explicitly agreed with Dr. Neuren's observation that the worsening of Slocum's condition was based solely on Slocum's subjective reports and not on clinical findings. (R. 534). Dr. Neuren noted contradictory elements in Slocum's statements.

When further objective findings were submitted, McCollum noted that they appeared normal and not indicative of disabling levels of pain. The subsequent independent medical review by Dr. Hawkings recommended as restrictions only that Slocum "not drive if drowsy or sleepy, and that [he] not use hazardous machinery or expose himself to unprotected heights." (R. 707).

Under the controlling standard of review, the court does not re-weigh the evidence or attempt to substitute its judgment for that of the Plan Administrator. Rather, the court's inquiry is limited to a determination of whether the Plan Administrator abused its discretion in refusing Slocum's claim. The court is also bound by the Plan Administrator's reasonable interpretation of the applicable policy language, which explicitly provides disability coverage only where the worker is unable to perform *any* of the duties of his job. Given the evidence before the court, which includes the plaintiff's continued and successful employment after the date of alleged disability, albeit on a part-time basis, the internal medical reviews supplied to the Plan Administrator by Greer, McCollum, and Dr. Neuren, and the independent medical review by Dr. Hawkins, the court finds that substantial evidence supports the Administrator's decision, and no abuse of discretion has been shown.

IT IS ACCORDINGLY ORDERED this 6th day of June, 2008, that the plaintiff's Motion for Summary Judgment (Dkt. No. 31) is denied; the defendant's Motion for Summary Judgment (Dkt. No. 29) is granted.

        s/J. Thomas Marten
        J. THOMAS MARTEN, JUDGE